J-A11043-26

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TALEEK AZAN PEREZ | : | |
| | : | |
| Appellant | : | No. 911 MDA 2025 |

Appeal from the Judgment of Sentence Entered June 6, 2025
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0005516-2023

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED: JULY 14, 2026**

Taleek Azan Perez (Appellant) appeals from the judgment of sentence imposed following his conviction for one count of persons not to possess a firearm, 18 Pa.C.S. § 6105(a)(1).[1]  Appellant challenges the denial of his motion to suppress and evidentiary rulings.  After careful review, we affirm.

The trial court set forth the procedural and factual history of this case as follows:

> Before being released from state prison and placed on state parole on or about September 1, 2023, [A]ppellant was presented with, and signed in acknowledgement, the terms and conditions for his … parole.  One such term was that he must refrain from possessing firearms or other weapons.  He was also not to be near a person, area, or home that may contain a firearm.  Another term

---

[1] The docket incorrectly lists a different subsection of this statute.  Appellant's criminal information was amended prior to trial to reflect the proper charge of 18 Pa.C.S. § 6105(a)(1).  **See** N.T. Jury Trial Volume 1, 6/4/25, at 16-17.

of Appellant's release was conditioned on his express consent to warrantless searches of his person, property, and residence by agents of the Pennsylvania Department of Corrections.

Agent Damien Mscisz, an intelligence analyst supervisor with the Pennsylvania Department of Corrections, Bureau of Investigations and Intelligence, processes information and produces products, including prison calls and GPS data, that give law enforcement information regarding criminal activities going on in prisons. Agent Mscisz testified during Appellant's suppression hearing and trial regarding, *inter alia*, three video calls with inmates that took place after his release. During trial, Appellant via Defense Counsel objected to the admission of these video calls as evidence because he believed Agent Mscisz could not properly authenticate such evidence and because the evidence was allegedly hearsay; the objections were overruled, and the video calls were played for the jury.

Agent Mscisz provided information to parole officers, based on the intel on Appellant's activity from the prior day, that Appellant may be in possession of a firearm in a safety warning on November 16, 2023, as a home search was being conducted that day. That day, parole officers conducted a search of Appellant's approved residence by a K-9 unit, with Appellant present, and located, in Appellant's bedroom, in the pocket of a "black hoodie-style zippered coat" owned by Appellant, a firearm later identified as a Glock 42, .380. When the firearm was located, Lancaster City police were called as this constituted a new crime, and the firearm was recovered and taken into custody. Appellant was then placed under arrest and charged with person not to possess a firearm, [18] Pa.C.S.[] § 6105(c)(8).[2]

On October 1, 2024, a suppression hearing was held wherein Appellant argued that the search of Appellant's residence [on] November 16, 2023, was illegal because it was not conducted pursuant to a warrant, and that any statements made to parole officers should be suppressed at trial because Appellant was not read his rights before questioning. After the hearing, this court determined that the requisite reasonable suspicion standard was met for the search of Appellant's residence and granted the motion concerning the statements made by Appellant as the Commonwealth determined they would not be using said

---

[2] This charge was amended prior to trial, **see** footnote 1.

statements at trial.

Trial commenced on June 4, 2025, and concluded on June 6, 2025, when the jury returned a guilty verdict for the sole charge of person not to possess a firearm. Per Appellant's request and with his consent, he was sentenced immediately following the verdict to four to eight years' incarceration. [Appellant did not file a post-sentence motion in this case.]

On July 7, 2025, appellant filed a timely Notice of Appeal with the Superior Court, and on July 28, 2025, he filed his Statement of Matters Complained of on Appeal[.]

Trial Court Opinion (hereinafter, TCO), October 6, 2025, at 1-5 (citations to the record omitted).

Appellant raises the following issues in his brief to this Court:

A. Whether the trial court erred in denying Appellant's motion to suppress evidence where the officers lacked reasonable suspicion to suggest Appellant was involved in criminal activity or a parole violation.

B. Whether the trial court erred in allowing the Commonwealth to introduce recorded prison [Z]oom calls that were not authenticated and where the prejudicial effect of said calls outweighed any possible probative value.

Brief for Appellant at 4 (unnecessary capitalization omitted).

We adhere to the following standard of review in matters involving the denial of a motion to suppress evidence:

We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. ... Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

***Commonwealth v. Ewida***, 333 A.3d 1269, 1274 (Pa. Super. 2025), *citing*

***Commonwealth v. Barr***, 266 A.3d 25, 39 (Pa. 2021).  "With respect to a

suppression court's factual findings, it is the sole province of the suppression

court to weigh the credibility of the witnesses.  Further, the suppression court

judge is entitled to believe all, part or none of the evidence presented."

***Commonwealth v. Rosendary***, 313 A.3d 236, 241 (Pa. Super. 2024)

(citation omitted).

"The Fourth Amendment of the United States Constitution and Article I,

Section 8 of the Pennsylvania Constitution prohibit unreasonable searches and

seizures."  ***Commonwealth v. Saunders***, 326 A.3d 888, 896 (Pa. 2024)

(internal citation and alteration omitted).  A warrantless search or seizure has

been deemed "presumptively unreasonable, subject to a few specifically

established, well-delineated exceptions.  These exceptions include, *inter alia*,

exigent circumstances, the plain view exception, searches incident to arrest,

consent searches, and automobile searches."  ***Id.*** at 896-97 (cleaned up).

Moreover, in relation to this case, "[t]he Fourth Amendment to the

United States Constitution and Article 1, Section 8 of the Pennsylvania

Constitution provide limited protection to those on parole."  ***Commonwealth***

***v. Gould***, 187 A.3d 927, 935 (Pa. Super. 2018).  As this Court has explained:

> A parole officer need not obtain a warrant based upon probable
> cause before conducting a search of a parolee.  Instead, a parole
> officer's warrantless search of a parolee will be deemed
> reasonable, and the fruits of the search will be admissible in court,
> if the totality of the evidence demonstrates: (1) that the parole
> officer had a reasonable suspicion that the parolee had committed

a parole violation, and (2) that the search was reasonably related to the parole officer's duty.

*Id.* (internal citations omitted and some formatting changed). Parolees' reduced expectations of privacy are evidenced by the requirement that they agree to endure warrantless searches based only on reasonable suspicion in exchange for the early release. ***Commonwealth v. Curry***, 900 A.2d 390, 394 (Pa. Super. 2006).

Appellant argues that the search in his case was not authorized because the parole agents lacked reasonable suspicion that he was involved in criminal activity or otherwise had violated the conditions of his parole. Parolee searches are provided for in 61 Pa.C.S. § 6182, "Supervisory relationship to offenders," which states:

**(d) Grounds for personal search of a department-supervised offender.**--

(1) A personal search of an offender may be conducted by an agent:

(i) if there is a reasonable suspicion to believe that the department-supervised offender possesses contraband or other evidence of violations of the conditions of supervision[.]

\* \* \*

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or under the control of the department-supervised offender contains contraband or other evidence of violations of the conditions of supervision.

\* \* \*

(4) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and

seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

    (i) The observations of agents.

    (ii) Information provided by others.

    (iii) The activities of the department-supervised offender.

    (iv) Information provided by the department-supervised offender.

    (v) The experience of agents with the department-supervised offender.

    (vi) The experience of agents in similar circumstances.

    (vii) The prior criminal and supervisory history of the department-supervised offender.

    (viii) The need to verify compliance with the conditions of supervision.

61 Pa.C.S. § 6182.

Appellant's analysis of this issue consists of a single paragraph:

Appellant alleges the Commonwealth failed to prove that he was in contact with a fellow parolee and presumed gang member, and the allegation was nothing more than conjecture and did not support reasonable suspicion that he was in violation of his parole. Appellant alleges there was no evidence admitted that created a reasonable suspicion that the appellant was in possession of contraband to substantiate the search of his residence. If [A]ppellant had been in contact with a parolee or if [A]ppellant had violated curfew, state parole agents could have issued a violation. Search of his residence would not have even yielded evidence to support he was in contact with a parolee or that he violated curfew. Appellant alleges this was a ruse to search his house. Appellant alleges the trial court erred in denying his motion to suppress.

Brief for Appellant at 13-14. In evaluating Appellant's claim, we consider the testimony given at the suppression hearing and the trial court's factual findings.

The trial court explained why it denied Appellant's suppression motion in its Rule 1925 opinion as follows:

> At the suppression hearing, Appellant's parole agent stated that the home search performed on November 16, 2023, was done … with reasonable suspicion of multiple parole violations and based on the intelligence provided by Agent Mscisz. The intelligence provided by Agent Mscisz included, *inter alia*, three video calls and GPS data involving Appellant.
>
> On October 24, 2023, Appellant participated in a video call with inmate Niziere Dean. During the call, Appellant shows multiple music videos on the video call that include fake and possibly real firearms, and [at] the end of one such video, the persons in the video aim firearms at the camera. Inmate calls are monitored, and some are monitored in real time, such as this call. Because this call was monitored live, prison staff shut down the call after they became aware [that] firearms were being shown.
>
> On October 26, 2023, Appellant participated on another inmate video call as he was riding a bicycle or electronic bicycle around Lancaster City. While this was occurring, Appellant pointed out various points in the city, including, eventually, that he was "in the F" or on Fremont Street. Someone on the video call pointed out that Appellant was acting scared of the area, and in response, Appellant states, in sum, that he has something on him that would end the visit (call). According to Agent Mscisz, there is a short list of reasons why a state correctional institut[ion] would shut off a video, which mainly included displaying firearms or nudity. Appellant was not displaying nudity and Agent Mscisz immediately suspected Appellant was speaking of a firearm.
>
> On November 15, 2023, Appellant, while wearing a GPS ankle bracelet, was tracked, along with another parolee, Treyon

Thomas,[3] driving from Lancaster, Pennsylvania to York, Pennsylvania. At some point while in the vehicle with Appellant present, Mr. Thomas makes a recorded call with a prison inmate and says he has a G-lock 42, .380, a model of firearm.

This information, given by a reliable third party, was important for parole officers, because it demonstrated multiple possible parole violations: "[a]nd with the information that was given to us by intelligence and the information that we had from the GPS points and the violations, we had reasonable suspicion to go and search his place."

TCO at 8-10 (citations to transcript omitted, some formatting altered).

Based upon the foregoing analysis, we find no error in the trial court's finding of reasonable suspicion. The parole agents here possessed ample reasonable suspicion to search Appellant's approved residence. The relevant inquiry here is not whether parole agents possessed sufficient evidence to establish guilt for a new criminal offense, but whether they had reasonable suspicion that Appellant had violated the conditions of his parole. Appellant's argument improperly examines each piece of information known to parole authorities in isolation and contends that none, standing alone, established that he had violated the conditions of his parole. However, reasonable suspicion is determined from the totality of the circumstances, not by evaluating each fact separately. *See Commonwealth v. Lewis*, 343 A.3d 1016, 1029 (Pa. 2025) (stating, in connection to an officer's necessary reasonable suspicion to support a vehicle stop, "a proper reasonable suspicion

---

[3] Mr. Thomas also wore a GPS device. N.T. Suppression Hearing, 10/1/24, at 29-31.

analysis considers the totality of the circumstances" and affords "due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience.").

Here, parole authorities were aware of multiple circumstances suggesting that Appellant was violating the conditions of his parole. First, Appellant participated in a monitored prison video call during which firearms were displayed, prompting prison staff to terminate the call. Second, during another monitored call where someone stated that Appellant was acting scared, Appellant responded that he had something on his person that would cause the call to be shut down if displayed. Agent Mscisz reasonably interpreted this statement as a reference to a firearm, as firearms are among the limited reasons prison staff immediately terminate inmate video calls. Third, GPS and investigative information revealed that Appellant had traveled with another parolee, Treyon Thomas, who stated during a recorded prison call that he possessed a Glock 42, .380 caliber firearm. Taken as a whole, this information suggests that Appellant was associating with prohibited individuals, engaging in conduct involving firearms, and potentially violating multiple conditions of his parole.

To the extent Appellant contends that the search was merely a "ruse," the record does not support that characterization. The parole agents acted upon intelligence gathered through monitored inmate communications, GPS tracking information, and their ongoing supervision of Appellant's compliance

with parole conditions. These are precisely the types of considerations contemplated by Section 6182(d)(4), including information provided by others, the offender's activities, prior supervisory history, and the need to verify compliance with conditions of supervision.

Accordingly, we conclude that the suppression court properly determined that the parole agents possessed reasonable suspicion to search Appellant's residence. Because the search was reasonably related to their supervisory duties and supported by reasonable suspicion of parole violations, the court correctly denied Appellant's motion to suppress. Appellant is not entitled to relief on his first claim.

In his second issue on appeal, Appellant maintains that the court erred in permitting unauthenticated Zoom calls from the prison into evidence. He also asserts that the prejudicial effect of those calls outweighed any possible probative value, such that they should not have been admitted.

In evaluating Appellant's claim, we first note that "[q]uestions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion." ***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020). An abuse of discretion is not established by demonstrating a mere error in judgment; rather, it is proven by the exercise of judgment that is manifestly unreasonable, a misapplication of law, or the result of bias, prejudice, ill-will

or partiality. *Id.* Further, "an appellate court may not disturb a trial court's discretionary ruling by substituting its own judgment for that of the trial court." *Commonwealth v. DiStefano*, 265 A.3d 290, 298 (Pa. 2021).

For evidence to be admissible at trial under the Pennsylvania Rules of Evidence, the proponent of that evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.E. 901(a). One way to authenticate evidence is to put forth testimony of a witness with knowledge that the item is what it is claimed to be. Pa.R.E. 901(b)(1). Further,

> [p]ursuant to the Pennsylvania Rules of Evidence, "[a]ll relevant evidence is admissible[.]" Pa.R.E. 402. Evidence is deemed relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b).

*Commonwealth v. Faison*, 297 A.3d 810, 825 (Pa. Super. 2023), *appeal denied*, 320 A.3d 82 (Pa. 2024).

The trial court found that all three video calls entered into evidence were properly authenticated because Agent Mscisz had personal knowledge of the correctional system's communication system and how it functions vis-à-vis inmate calls. In the call that occurred on October 24, 2023, Agent Mscisz identifies Appellant by his voice and his appearance. *Id.* at 100. In the call from October 26, 2023, Agent Mscisz noted Appellant participated in the call by his appearance on the video screen. *Id.* at 104. As for the call from November 15, the night before Appellant was arrested in this case, Appellant did not speak on the call. However, the call was placed by Mr. Thomas, a

good friend of Appellant and also a parolee. Both Mr. Thomas and Appellant, due to their being on parole, wore GPS monitors. Agent Mscisz testified that he reviewed the GPS records for both men, and they were together during the call, where Mr. Thomas mentioned holding a "G-lock 42, a .380".[4] *Id.* at 118, 141-42. Agent Mscisz authenticated the videos both through direct evidence (seeing Appellant on the screen) and circumstantial evidence (through the convergence of GPS data). The videos were admissible and we find no abuse of the trial court's discretion here.

In the alternative, Appellant asserts that, even if properly authenticated, the calls should not have been admitted at his trial because the information within was more prejudicial than it was probative. A court may exclude relevant evidence from trial if it finds that the probative value of the evidence is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403. Here, Appellant argues that the prejudicial effect of the evidence from the Zoom calls outweighs any probative value of the evidence.

However, Appellant did not object to the calls being entered into evidence on this basis at trial. Because Appellant never objected on these grounds, the trial court was not afforded the opportunity to weigh the

---

[4] Notably, the firearm recovered from the hoodie jacket found in Appellant's bedroom was a Glock 42, .380 caliber.

probative value of the evidence against any potential prejudice. Thus, this claim is waived. **See** Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."). **See also Commonwealth v. Spone,** 305 A.3d 602, 612 (Pa. Super. 2023) ("With respect to preserving challenges to the admission or exclusion of evidence, Pa.R.E. 103 addresses rulings on evidence and requires a contemporaneous objection in order to preserve a claim of error[.]").

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/14/2026